UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 04-20489-CR-Lenard

UNITED STATES OF AMERICA,

Plaintiff,

vs.

BARBARA SWEETING,

Defendant.

_____/

**NIGHT BOX FILED**
**NOV 0 1 2004**
CLARENCE MADDOX
CLERK USDC / SDFL / MIA

## MOTIONS TO DISMISS INDICTMENT

Barbara Sweeting, by and through undersigned counsel, hereby moves this Court for an order dismissing the indictment in this case which alleges a violation of 18 U.S.C. § 611, being an alien and voting, as unconstitutional because it lacks any *mens rea* requirement. Finally, she moves to dismiss the entire indictment because the Grand Jury was misinstructed.

## STATEMENT OF FACTS IN SUPPORT OF MOTIONS

According to the discovery provided by the prosecution, Ms. Sweeting is a lawful permanent resident, having emigrated to the United States almost, if not over 42 years ago from Nassau, Bahamas. The government provided a document, which purports to be a voter registration document filled out by Ms. Sweeting February 26, 1999.

Ms. Sweeting is charged with violating 18 U.S.C. § 611, a misdemeanor statute criminalizing voting in a federal election while being an alien.

I.   **18 U.S.C. §611 LACKS ALL *mens rea*, THUS IT IS OVERBROAD AND VIOLATES DUE**

Ms. Sweeting is  charged with violating 18 U.S.C. § 611, a misdemeanor statute criminalizing voting in a federal election while being an alien.  While the indictment itself alleges that Ms. Sweeting, "an alien, fully knowing she was not a United States citizen, did knowingly vote in an election held in part for the purpose of electing a candidate for federal office,"the statute does not require even knowledge.  It provides:

**Voting by aliens**

It shall be unlawful for any alien to vote in any election held solely or in part

for the purpose of electing a candidate for the office of President, Vice

President . . . .

18 U.S.C. § 611 (a).  The statute then lists a number of exceptions by which aliens could be free from prosecution.  *See* 18 U.S.C. § 611(a)(1)-(3); § 611(c)(1)-(3).  One of these includes, as part of a three-part exception, someone who <u>reasonably believes</u> she or she is a citizen, *see* 18 U.S.C. § 611(c)(3) (emphasis added), but only if that person also resided permanently in the United States before age 16 and possibly if the person's parents are also citizens of the United States.  18 U.S.C. § 611(c)(1)-(2).[1]  There is no specification regarding who bears the burden of demonstrating the exception(s).  Thus, individuals who mistakenly believe that they have properly naturalized but who did not, and who do not fulfill the other exceptions (or all parts thereof) set forth in section 611(c) have no defense.  Individuals brought here from abroad as children of undocumented or

---

[1] It appears that sections 611(c)(2) and (3), providing an exception from prosecution for those who permanently resided in the U.S. prior to age 16 and those who reasonably believed they were U.S. citizens apply in tandem as these clauses are joined by the word "and." *See*18 U.S.C. § 611(c)(2)-(3).  However, section 611(c)(1) may stand on its own, providing an exception for the children of parents who are U.S. citizens, either by birth or naturalization.

adoptive parents, who never realize they are not citizens, who vote with innocent intent, have no defense.  Similarly, individuals who, when an objective standard is applied, did not "reasonably" believe they were citizens of the United States or individuals who have never known that as aliens, they were not permitted to vote, an otherwise "innocent" activity,[2] have no defense under this statute.  That one part of the possibly tripartite exception contains an objective[3] form of *mens rea* means only that Congress thought about *mens rea*'s place in this statute and rejected it.

Hence, Ms. Sweeting's position is twofold: 1) the statute violates due process because it is overbroad – it criminalizes two wholly innocent acts, being an alien and voting, and does so deliberately, excluding any attendant *mens rea*; 2) alternatively, if the Court is not willing to strike the statute and believes, consistent, with principles of statutory construction, that it can rewrite the statute to ignore Congress's exceptions and read in *mens rea*, a specific intent *mens rea* is required.  Specific intent *mens rea* is necessary in this case in order to separate wrongful conduct from otherwise innocent conduct.  Reading such intent into the statute "'narrows the scope of the enactment by exempting innocent or inadvertent conduct from its proscription.'" *See National Mobilization Comm. v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969).

## A.   The Statute Is Overbroad Because It Deliberately Lacks All *mens rea.*

"The definition of the elements of a criminal offense is entrusted to the legislature,

---

[2] Voting is more than an otherwise "innocent activity."  It is considered one's civic duty, such as paying taxes – something which aliens do.  Voting is a highly encouraged activity, replete with television ads encouraging people to register to vote, television programs, such as "Rock the Vote," people on street corners and at certain government institutions, such as the Department of Motor Vehicles and the like, registering individuals to vote.

[3] Ordinarily, *mens rea* is phrased as knowledge or willfulness and it is not limited to what would be known as an objectively reasonable matter.

particularly in the case of federal crimes, which are solely creatures of statute." *Liparota v. United States*, 471 U.S. 419 (1985). "[D]etermining the mental state required for commission of a federal crime requires 'construction of the statute and . . . inference of the intent of Congress." *Staples v. United States*, 511 U.S. 600, 605 (1994) (citations omitted, elipses in original). In this case, Congress made it easy – they deliberately omitted all *mens rea* in the offense elements, relegating  only the *mens rea* of the objectively reasonable person to one part of a possibly three-part exception.

The deliberate and complete absence of any *mens rea* is fatal to this criminal statute and this Court must strike it down. Statutes which lack all *mens rea* are universally disfavored in criminal law.   *Liparota v. United States*, 471 U.S. 419 (1985); *United States v. United States Gypsum Co*, 438 U.S. 422, 438 (1978). In the criminal law, there is a strong presumption in favor of scienter.

> Beginning with first principles, the Supreme Court's *mens rea* cases provide that: The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil . . . . Unqualified acceptance of this doctrine in English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that <u>to constitute any crime there must first be a "vicious will</u>."

*Morissette v. United States*, 342 U.S. 246, 250-251 (1952) (emphasis added). "'It is alike the general rule of law, and the dictate of natural justice, that to constitute guilt there must be not only a wrongful act, but a criminal intention. Under our system, (unless in exceptional cases), both must be found by the jury to justify a conviction for crime." *Id.* at

274.

*Morissette*, the landmark Supreme Court case regarding *mens rea,* considered a statute, 18 U.S.C. § 641, which provided: "Whoever embezzles, steals, purloins or knowingly converts to his use or the use of another or without authority, sells conveys or disposes of any record, voucher, money or thing of value of the United States shall be fined." In that case, the trial judge, affirmed by the court of appeals, construed the word "knowingly" to mean only that if one <u>knew</u> that she had converted or taken the property, she was guilty of the crime notwithstanding any innocent intent in the taking of the property. The Supreme Court reversed, concluding that even though Congress did not specify any criminal intent in the statute, the strong presumption in favor of *mens rea* sufficient to distinguish innocent intent from culpable, required that the statute be construed as containing *mens rea.* *Id.* at 250. Even though the statute specified only "knowing conversions," when used in that context,

> knowing conversion requires more than knowledge that defendant was taking the property into his possession. He must have had knowledge of the facts, though not necessarily the law, that made the taking a conversion. In the case before us, whether the mental element that Congress required be spoken of as knowledge or as intent would not seem to alter its bearing on guilt for it is not apparent how Morissette could have knowingly or intentionally converted property that he did not know could be converted, as would be the case if it was in fact abandoned or it he truly believed it to be abandoned and unwanted property."

*Id.* at 271.

Again in *Liparota v. United States,* 471 U.S. 419 (1985), the Supreme Court held

that criminal statutes which lack all *mens rea* are disfavored in criminal law, and to interpret a statute in a way which dispenses with *mens rea* would be to criminalize a broad range of innocent conduct. *Id.* at 426. *Liparota* involved a statute criminalizing knowingly using, acquiring, possessing or transferring food stamps in any manner not authorized by the particular statute. There, the government argued that "no *mens rea* or 'evil-meaning mind' . . . [was] necessary for conviction," meaning as long as the defendant knew that he possessed food stamps, he did not have to know that his possession was "unauthorized" to be guilty under the statute. The defendant argued that this interpretation "dispensed with the only morally blameworthy element in the definition of the crime." *Id.* at 423. Citing *Morissette*'s discussion of how "an injury can amount to a crime only when inflicted by intention," *id.* at 425 (citing *Morissette*, 342 U.S. at 230), the Court held that not only the possession but the unauthorized nature of it, had to be knowing. *Liparota*, 471 U.S. at 425 ("Absent indication of contrary purpose in the language or legislative history of the statute, we believe that [the statute] requires a showing that the defendant knew his conduct to be unauthorized by statute or regulations"). Title 18 U.S.C. § 611 criminalizes voting by an alien, who is by virtue of noncitizenship, unauthorized to vote. One may argue that aliens ought to know that they cannot vote, thus, no *mens rea* is necessary. *Liparota* criminalizes unlawful possession of food stamps by individuals who were not authorized to possess them. There, one could argue that everyone ought to know that only certain people qualify for food stamps, thus, no *mens rea* regarding obtaining the food stamps in an unauthorized manner, should be required. Notwithstanding what everyone ought to know, the Supreme Court held that because possession of food stamps was an innocent, as opposed to

criminal act, to obtain a conviction under the statute, the government must prove that the defendant knew not only that he possessed the food stamps but that such possession was unauthorized by statute or regulation.  *Liparota*, 471 U.S. at 425.

Again in *United States v. X-Citement Video*, 513 U.S. 64 (1994), the Supreme Court rejected the "most grammatical reading of the statute criminalizing "knowingly transporting, shipping, receiving . . . a visual depiction . . . which involves the use of a minor engaging in sexual explicit conduct." This reading criminalized only the knowing transportation where the defendant was unaware of the age of actor engaging in the sexual explicit conduct. *Id.* at 71-72. Citing *Morissette*, *Liparota* and *Staples v. United States*, 511 U.S. 600 (1994), the Court read a knowledge requirement regarding the age of the actor engaging in the sexually explicit conduct into the statute.  *Id.* at 72 ("*Morissette*, reinforced by *Staples*, instructs that the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct.").  That level of *mens rea* was required so that "[c]riminal intent serves to separate those who understand the wrongful nature of their acts from those who do not . . . ." *X-Citement Video*, 513 U.S. at 72 n.3.

The Ninth Circuit has already addressed a similar issue with 18 U.S.C. § 1425, which criminalizes knowingly acquiring naturalization contrary to law.  The court held that the term "knowingly" meant not only that the act of acquiring naturalization had to be knowing but that knowingly had to apply to the terms "contrary to law" as well.  *United States v. Pasillas-Gaytan*, 192 F.3d 864, 867 (9th Cir. 1999).

In *Pasillas-Gaytan*, the court rejected the government's argument that all a

defendant had to do was to "knowingly" procure naturalization because "applying for naturalization is almost always a voluntary, intentional act.  We believe that the statute requires a culpable state of mind as well.  The government's construction of the statute would criminalize completely innocent conduct and would essentially impose strict liability upon defendants." *Id.* at 868.  Because "[t]he general rule is that criminal statutes do not impose strict liability," and because [t]he existence of *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence," the statute had to be construed "with the general presumption that the defendant must know the facts that make his conduct illegal." *Id.*[4]

### B. This Is Not A "Public Welfare" Offense.

This statute cannot survive absent *mens rea*.  The Supreme Court has only permitted this result in extremely limited circumstances.  The Court has labeled these offenses "public welfare offenses," and characterized them as those where "penalties commonly are relatively small, and conviction does not grave damage to an offender's reputation." *Morissette*, 342 U.S. at 260.  The reasoning underlying these public welfare offenses are that the "interest of the larger good . . . puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger. *Id.* But the Supreme Court warned: 'Hardship there doubtless may be under a statute which thus penalizes the transaction though consciousness of wrongdoing be totally wanting.'" *Id.* (quoting *United States v. Dotterweich*, 320 U.S. 277, 280-81 (1943).  The Supreme Court recognizes that criminal statutes which lack all *mens rea* are both

8

exceptionally rare and exceptionally harsh. *See id.*; *see also Liparota*, 471 U.S. at 432-433.

In *Liparota*, 471 U.S. at 433, the Supreme Court defined those rare "public welfare offenses" which lack all *mens rea* as "a type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety." *Id.* It discussed the few instances where a complete lack of *mens rea* is permissible: such as the possession of hand grenades, *see United States v. Freed*, 401 U.S. 601 (1971) or the selling of adulterated drugs, *see Dotterweich*, 320 U.S. at 284, and noted that possession of an unregistered firearm, even though deemed "dangerous" to the public, was not one of these "public welfare offenses." *Liparota*, 471 U.S. at 432-433 (citation omitted).

Similarly, it is no excuse for a lack of *mens rea* that this crime is a misdemeanor as opposed to a felony as the Supreme Court in *Morissette* included misdemeanors in its classification of crimes serious enough to warrant implying a *mens rea* when such was absent from the statute. *See* 342 U.S. at 253.

**D.     If This Court Believes It Can Save The Statute By Reading In *mens rea*, It Must Read In "Specific Intent" In Order To Separate Innocent or Inadvertent Conduct From Wrongful Conduct.**

"'It is alike the general rule of law, and the dictate of natural justice, that to constitute guilt there must be not only a wrongful act, but a criminal intention. Under our system, (unless in exceptional cases), both must be found by the jury to justify a conviction for crime. *Morissette*, 342 U.S. at 274. In counseling against construing statutes to lack all *mens rea*, the Supreme Court cites with approval the following passage: "[t]o inflict

9

substantial punishment upon one who is morally entirely innocent, who caused injury through reasonable mistake or pure accident, would so outrage the feelings of the community as to nullify its own enforcement.'" *Id.* at 262 n.20 (quoting Sayre, *Public Welfare Offenses*, 33 Col. L. Rev. 55, 56.

Here, 18 U.S.C. § 611 lacks all *mens rea*. If this Court rejects the previous arguments that the statute suffers from an irremediable defect, the only remedy is to imply *mens rea* sufficient to separate innocent from wrongful conduct. *See X-Citement Video*, 513 U.S. 64, 72, (1994); *see also id.* at 81 ("The presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct *even when the plain text of the statute says otherwise*") (emphasis in original). Indeed, it is the rule rather than the exception that courts read *mens rea* into the statute even where it is otherwise absent. *See, e.g., Morissette*, 342 U.S. at 250; *Liparota*, 471 U.S. at 425; *Staples*, 511 U.S. 600; *X-Citement Video*, 513 U.S. 71-72.[5]

At a minimum, because the statute criminalizes otherwise wholly innocent acts, *i.e.,* being an alien and voting, if this Court were to read a *mens rea* into the statute to save it, it would have to read a specific, rather than general intent *mens rea* into this statute. *See Carter v. United States*, 530 U.S. 255, 269 (2000) (Court noted that "some situations may call for implying a specific intent requirement into statutory text"). In *Carter*, the Court indicated that such a circumstance was called for when the statute would otherwise "fail to protect the innocent actor," *i.e.,* the person who committed the actus reus but without intending the harm the statute sought to prevent. See *id.*

The Supreme Court has also indicated that specific and general intent are not the

---

[5] Of course, unlike 18 U.S.C. § 611, usually the word "knowingly" appeared somewhere in the statute. *See, e.g.,* Morissette , 342 U.S. at 250; *X-Citement Video*, 513 U.S. 71-72; *Liparota*, 471 U.S. at 425.

only forms of *mens rea*. *See Liparota*, 471 U.S. at 423 n.5 ("We have also recognized that the mental element   in criminal law encompasses more than the two possibilities of 'specific' and 'general' intent") (citations omitted).   Ms. Sweeting believes that specific intent or willfulness should be required to separate culpable from innocent conduct in this case.   At the very least, this Court should read the same type of *mens rea* into this statute, 18 U.S.C.  § 611 that the Supreme Court read into the food stamp statute in *Liparota* – it labeled this knowledge, which is ordinarily read as "general intent" however, it required that the "petitioner knew that his conduct was unauthorized or illegal." 471 U.S. at 434;[6] *see also Pasillas-Gaytan*, 199 F.3d at 868 ("[T]he defendant must know the facts that make his conduct illegal").   That level of *mens rea* is required here so that "[c]riminal intent serves to separate those who understand the wrongful nature of their acts from those who do not . . . ." *See X-Citement Video*, 513 U.S. at 72 n.3

According to *Liparota*, "requiring *mens rea* is in keeping with our longstanding recognition of the principle that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." 471 U.S. at 427.   Applying the rule of lenity "ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor and the court in defining criminal liability." *Id*.  Here, application of the Rule of Lenity requires that the appropriate *mens rea* for this statute is specific intent or a knowledge requirement which ensures that, Ms. Sweeting "knew that her conduct was unauthorized or illegal." *See id.*

---

[6]  The Court did not require proof that the defendant knew the precise law or regulation but the government did have to demonstrate that he knew his actions were unlawful to obtain a conviction. *Liparota*, 471 U.S. at 434.

11

**Respectfully submitted,**

**KATHLEEN M. WILLIAMS**
**FEDERAL PUBLIC DEFENDER**

By: _____
Celeste S. Higgins,
Supervisory Assistant Federal Public Defender
Florida Bar No. 0909718
150 West Flagler Street
Suite 1700
Miami, Florida 33130-1556
Tel: (305) 530-7000
Fax (305) 536-4559

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via

Inter Agency Mail to: Karen Rochlin , Assistant United States Attorney, 99 N.E. 4th Street,

Miami, Florida 33l32 this _____ day of November, 2004.

_____
Celeste S. Higgins

J:\Sweeting, Barbara W. Reg\Pleadings\MotionDismiss.Voter Fraud Cases.wpd

12